IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01286-RBJ

WILDEARTH GUARDIANS,

Plaintiff,

v.

EXTRACTION OIL & GAS, INC.;
BONANZA CREEK ENERGY OPERATING COMPANY, LLC;
CRESTONE PEAK RESOURCES OPERATING, LLC;
GREAT WESTERN OPERATING COMPANY, LLC;
MALLARD EXPLORATION, INC.;
NOBLE ENERGY, INC.; and
PDC ENERGY, INC.

     Defendants.

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

The Colorado Oil and Gas Association ("COGA") respectfully moves for leave to file the accompanying amicus curiae brief ("Motion") under Fed. R. App. P. 29 in support of Defendants' Motion to Dismiss. COGA's amicus curiae brief is attached.

### STATEMENT OF CONFERRAL

Counsel for COGA has conferred with WildEarth Guardian's ("WEG") counsel who indicated that they are opposed to the Motion. Counsels for Defendants do not oppose this Motion.

**MOTION FOR LEAVE**

COGA represents numerous companies involved in the exploration, development, and production of oil and natural gas in Colorado. COGA and its members have a direct stake in the outcome of this litigation because it effectively seeks to eliminate a properly adopted and legally permissible air-permitting regime upon which COGA's membership relies in conducting their oil and gas exploration and production operations. WEG's assertion of penalties against the seven Defendants is merely ancillary to that primary goal of forcing a change to the industry-wide rules governing the timing for obtaining an air permit and the availability of synthetic minor permits. In pursuing its collateral attack on the air-permitting regulation, WEG's suit implicates a variety of complex state and federal regulatory regimes pertinent to the control of air emissions. As a result, placing those highly technical rules and regulations in context is not only desirable, but necessary to ensure an informed decision-making process for the Court. COGA's amicus brief will do just that without duplicating the litigants' arguments. It will also provide an industry-wide perspective on the impact of jettisoning the air-permitting framework at issue on existing and proposed oil-and-gas production operations within the State of Colorado.

The permitting rule in WEG's sights was adopted by the State of Colorado's Air Quality Control Commission in 1993 and revised in 2002. It allows oil-and-gas producers to apply for any necessary air-emission permits 90 days after they commence construction (the "90-day timing rule") and to utilize synthetic minor permits. *See* Compl. ¶¶ 1-2, A-B, Doc. No. 1; Defs.' Joint Mot. to Dismiss at 1-2, Doc. No. 29. The Complaint makes a variety of assertions regarding the federal and state regulatory frameworks that, according to WEG, render the 90-day timing rule invalid and make the Defendants' facilities ineligible for synthetic minor permits.

*See id.* ¶¶ 33-52.  It also asserts that those same rules show that the Defendants are in violation of many federal permitting requirements.  Indeed, WEG repeatedly claims that the Defendants, and by extension all oil-and-gas producers in Colorado, are releasing emissions with impunity.  *E.g., id.* at ¶ 288.  COGA's membership strenuously disputes those assertions since the oil-and-gas industry is among the most regulated industries in the State.

To understand the scope of WEG's overstatements and their practical implications, it is necessary to understand what the existing regulatory frameworks are and how they apply to oil-and-gas operations.  *See Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 808 (3rd Cir. 1991) (explaining that role of amici is to provide "supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision.").  Placing those regulatory schemes in context will allow the Court to understand the detailed and technical nature of air-emission regulations, and the State's ability to control emissions from the very beginning of oil or gas well construction.

COGA's position as a nationally-recognized trade association that represents Colorado's upstream oil-and-gas producers, among other entities, uniquely enables it to accomplish that task.  In particular, COGA is able to: address the benefits of synthetic minor permits; provide a detailed assessment of the pertinent state and federal regulatory regimes; and discuss the practical application of those regulations to oil-and-gas operations.  Indeed, recognizing the emission restrictions and permitting requirements imposed upon an oil-and-gas producer before the drill bit ever hits the Earth will show that WEG's claims lack foundation.  COGA's amicus brief will present those issues with a level of detail and consideration that the litigants will be unable to do in light of WEG's factual contentions.  *Cf. Rocky Mt. Wild v. Walsh*, 216 F. Supp.

3d 1234 (D. Colo. 2016) (allowing an oil-and-gas industry amicus brief in a challenge to a decision not to list two plant species as threatened or endangered).

Similarly, COGA will aid the Court's understanding of the practical implications for oil-and-gas producers of WEG's suit.  For 26 years, producers have relied and continue to rely upon the 90-day timing rule in conducting their operations.  Casting doubt on the legality of that rule, or eliminating it altogether, presents significant legal and economic ramifications for COGA's membership.  COGA's amicus brief will identify the oil-and-gas industry's contributions to the State's economy, the scale of the legal risks to the State's oil-and-gas producers, and the administrative morass that will result from allowing WEG's suit to go forward.

Because the Court must address the validity of Colorado's lawfully-adopted 90-day timing rule, understanding the existing regulatory regime and the potential impacts of allowing WEG's suit to proceed are plainly desirable and relevant to resolving the Defendants' motions to dismiss.

Thus, COGA requests that the Court exercise its discretion to permit COGA to file an amicus brief that: (a) addresses the benefits of synthetic minor permits; (b) discusses the state and federal statutory and regulatory regimes relevant to upstream oil-and-gas operations and air emissions; and (c) places the practical economic and policy implications of WEG's suit in context.  *See In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) (recognizing the court's broad, inherent discretion to allow an amicus brief).

Respectfully submitted on August 7, 2019.

          *s/Chris Colclasure*
          Chris Colclasure
          Andrew K. Glenn
          BEATTY & WOZNIAK, P.C.
          216 Sixteenth Street, Suite 1100
          Denver, CO 80202
          Telephone: 303-407-4499
          Email:  ccolclasure@bwenergylaw.com
                   aglenn@bwenergylaw.com

*Attorneys for Colorado Oil & Gas Association*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2019, I electronically filed the foregoing **MOTION FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

*Attorneys for Plaintiff WildEarth Guardians:*

Katherine Merlin, kate@katemerlinlaw.com
Randall M. Weiner, randall@randallweiner.com

*Attorneys for Defendants Extraction Oil & Gas, Inc., Crestone Peak Resources Operating, LLC, and Mallard Exploration, LLC:*

Bennett L. Cohen, bcohen@polsinelli.com
Colin Deihl, cdeihl@polsinelli.com

*Attorneys for Defendants Bonanza Creek Energy Operating, LLC, Great Western Operating Company, LLC and PDC Energy, Inc.:*

James Henderson, jim.henderson@dgslaw.com
Radcliffe Dann, IV, randy.dann@dgslaw.com
Shalyn Kettering, shalyn.kettering@dgslaw.com
Shannon Stevenson, shannon.stevenson@dgslaw.com

*Attorneys for Noble Energy, Inc.:*

Christopher Chrisman, cachrisman@hollandhart.com
Eric Waeckerlin, cpwaeckerlin@hollandhart.com

*s/Chris Colclasure*